## WILLIE GRADY v. THE STATE.

No. 12378.   Delivered March 27, 1929.
Rehearing denied June 12, 1929.

The opinion states the case.

*F. M. Newton* and *T. F. Ragsdale* of Greenville, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for rape, punishment being assessed at death.

Prosecutrix, a young white woman, lived on the farm with her husband.   Her brother also lived on the same farm.   In order to help with the farm work she had been going in an automobile to the

town a short distance away and bringing cotton pickers to the farm. She had been told by her brother that he had engaged some cotton pickers at a certain house described by him and before daylight prosecutrix went to the house of appellant's mother to get the hands. At this time appellant and his brother were in the house. She was directed by appellant's mother to a house across the road where Tinsie Williams lived. While prosecutrix was at this house inquiring for hands a negro, positively identified by prosecutrix, as appellant, came to her car and informed her that he could show her where she could get some hands, got in the car and directed her where to go, and told her when to stop. He then jerked her out of the car, threw her down on the ground and forcibly had intercourse with her; according to prosecutrix's version of the matter, he was armed with a knife, and when she screamed he threatened to kill her if she did not hush; she said she did all she could to prevent him from accomplishing his purpose but that she was afraid of the knife. A witness who saw prosecutrix soon after the occurrence described the condition of her underclothing as follows:

"Her clothing next to her body was soiled; she had on teds and a slip and her teds were torn at both sides and across the center and her slip was torn. The center where the teds were torn, they were pulled loose entirely. The part in the middle that was pulled loose is the part that goes between the limbs when the garment is worn; it was torn completely in two."

Prosecutrix drove home, immediately told her husband what had occurred, the officers were notified and within a few minutes they were at the home of appellant's mother. Appellant was not there but his brother (Johnnie), was in bed. Johnnie and appellant resembled each other, both wore mustaches and were about the same color. The officer swore that prosecutrix said Johnnie "looked like the one" who had committed the crime. Both Johnnie and his mother testified that she identified him positively as the offender. Within thirty minutes the officers also arrested appellant at a house near where he lived. His shoes were soiled and the bottom of his trousers damp as though he had been walking through wet grass or weeds. He was arrested and prosecutrix immediately identified him positively as the one who had assaulted her. Johnnie testified as follows:

"I don't know when Willie left the house that morning we were arrested but I know when he got up. Willie got up just as soon as that lady left, I don't know whether he left, I wasn't paying any at-

tention, I went back to sleep, but I know he got up. No. I didn't tell Tinsie Williams I was going to go with her to pick cotton that day. Before I was arrested that morning I guess it was about five or five thirty when he got up, mamma asked him where he was going and he said he was going to pick cotton with Tinsie Williams. He told mamma he was going to pick cotton with Tinsie Williams when he was getting up. At that time I don't know whether or not the woman had pulled the car up from our house in front of Tinsie Williams', but she had pulled it up from in front of our house. After I answered the door I went back to bed and went to sleep. I was the one that answered at the door and when I went back to bed I stayed in bed and slept right there until I was arrested. The next time I saw Willie after I got up was when they brought him to jail, I was looking out the window. I did not leave that house any time from the time I got up and that woman was talking about getting cotton pickers until the officers came and got me. No, when the officers came after me I didn't see Willie nowhere; he wasn't in the room when they arrested me and I believe he was gone because nobody was there; I know he wasn't in my room. The last thing I heard him say he told our mother he was going to pick cotton with Tinsie Williams. Tinsie Williams lives in a white house across the street kinder southwest from where we live; that is where my mother told this woman to go, she said, 'I guess they are the folks over to that house,' and told this woman to go to that house. I suppose Willie heard my mother tell her to go over there, there wasn't anything to keep him from hearing; no, he wasn't putting on his clothes right then, it was after she had done told her and he got up then and put on his clothes."

Appellant denied being the perpetrator of the crime, claimed that it was some fifteen minutes after prosecutrix left his house before he got up and that he went to Ellen Brigham's to inquire about picking cotton with her. He accounted for his trousers being damp by explaining that he had gone through some weeds and grass to look after some "home-brew" he had hidden. Other witnesses testified for appellant on the issue of alibi.

The indictment charged that the rape was accomplished by "force, threats and fraud." The court submitted the case upon the allegation of force alone, charging that:

"To constitute rape by force, the accused must have ravished the alleged injured female by having carnal knowledge of her without her consent and against her will by force, and the force used must

have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties, and other circumstances of the case; * * *."

There was no objection to the charge in any particular and no bill of exception to any proceeding during the trial is brought forward. The only legal question suggested is that the court having submitted the case alone upon the averment of rape by force, the evidence is not sufficient to support a conviction for that character of rape. The statute itself, Article 1184, P. C., provides that the force used—

"Must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties *and other circumstances of the case.*"

It has been held many times that in the absence of threats every exertion in the power of the female under the circumstances must be made to prevent the act of intercourse or consent will be presumed; but in determining the sufficiency of the force used the jury is authorized to take into consideration threats made by accused at the time of the commission of the crime. Sharp v. State, 15 Tex. Cr. App. 171; Bass v. State, 16 Tex. Cr. App. 62; Perez v. State, 50 Tex. Cr. Rep. 34, 94 S. W. 1036. Appellant's contention can not be sustained.

We have examined the case with the care demanded where accused has been condemned to forfeit his life at the demand of the law for the crime committed. The evidence is deemed sufficient and no question of law authorizes this court to disturb the verdict.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant insists in his motion that in as much as the evidence in this case clearly shows that the rape in question was accomplished by the use of threats as well as force, it was fundamental error for the court in his charge to omit to submit to the jury the proposition of guilt predicated upon rape by threats; in other words, that even though it be clearly proven that he was guilty of rape by force, if in connection with such force he also threatened the prosecutrix, he had the right upon the trial to have the law of rape by threats given to the jury, and that to fail so to do was a trespass upon his legal rights. We are unable to assent to such a proposition. It seems to us that the action of the court was

clearly favorable to appellant. Much emphasis was laid in the testimony on the trial upon the threats used by appellant. To omit to give the law of threats and to confine the jury's consideration only to the question of whether the rape was by force, could but increase the burden upon the State and in nowise injure appellant.

We have again considered the facts but are of opinion that they overwhelmingly sustain the verdict.

The motion for rehearing will be overruled.

*Overruled.*